UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

T.G.,

    Plaintiff,

v.

United Healthcare Services, Inc.,

    Defendant.

_____

Case No.    20-CV-00564

**Complaint for Violation of 29 U.S.C. § 1132(a)(1)(B)**

**NOW COMES** plaintiff T.G., who asserts to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### INTRODUCTION

**1.** This action, brought under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1191c, arises from Defendant's arbitrary and capricious decision to deny benefits for medically necessary mental health services.

### JURISDICTION AND VENUE

**2.** This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

**3.** Venue is appropriate in this district because Defendant is a citizen of this judicial district and many of the breaches at issue took place here. 29 U.S.C. § 1132(e)(2).

**PARTIES**

4.  At all relevant times T.G. was a full-time employee of Ameriprise Financial, Inc., a financial services company with its headquarters in Minneapolis, Minnesota, within this judicial district. T.G. is a participant under a health insurance plan, the Ameriprise Financial Medical Plan, administered by defendant United Healthcare Services, Inc. The Plan is governed by ERISA, 29 U.S.C. §§ 1001–1191c. Under ERISA, T.G. is a plan "participant." 29 U.S.C. § 1002(7). A copy of the Plan's Summary Plan Description is attached at **Exhibit A** to this Complaint.

5.  This case involves a dispute over coverage obligations triggered by medically necessary mental health services provided to J.G., T.G.'s son. J.G. has standing to bring this claim because a) J.G.'s coverage is provided through T.G.'s employment status at Ameriprise; b) T.G. personally paid for all services that UHC denied; c) on April 7, 2016, J.G. executed a power of attorney in favor of T.G. and his mother, which remains in effect; d) on April 7, 2016, J.G. executed a Health Care Proxy in favor of T.G. and his mother, which remains in effect.

6.  Defendant United Healthcare Services, Inc. is a Minnesota corporation with headquarters at 9900 Bren Road East, Minnetonka, Minnesota. United Healthcare Services, Inc. is a subsidiary of UnitedHealth Group, Inc. In this Complaint, "UHC" or "Defendant" refers to the named defendant and all

successor, predecessor, subsidiary, parent and related entities to which these allegations pertain.

7. Under the terms of the Ameriprise Financial Medical Plan, UHC is a "Claims Administrator" with fiduciary authority over all claims decisions. UHC's claims' decisions are final and not subject to further review. **Ex. A, at 3**. Because of this status, UHC owes fiduciary obligations to T.G. and J.G.

## FACTS

8. UHC, as Claims Administrator, has authority to determine what are "Covered Health Services." The Plan defines "Covered Health Services" as services and supplies that are:

- Provided for the purpose of preventing, diagnosing or treating Sickness, Injury, Mental Illness, Substance Use Disorder, or their symptoms
- Included in Sections 3 and 5, *Plan highlights* and *Coverage details*
- Provided to a Covered Person who meets the Plan's eligibility requirements . . .
- Not identified in Section 7, *Exclusions: what the Plan will not cover*

**Ex. A, at 73**.

9. Both T.G. and J.G. are "Covered Person[s]" as they are either an employee or enrolled dependent and both met all of the Plan's eligibility requirements at the time the services at issue were rendered. *See id.*

10. J.G. has a history of depression and anxiety. At the onset of the services at issue here, his suicide risk was considered chronically elevated. He had been diagnosed with Major Depressive Disorder and Anxiety Disorder.

11. In May 2018, with the consent of his then treating physicians, J.G. was admitted to a program called Pacific Quest. Located in Hawaii, the program combines individual and group therapy along with experiential-based programming. The full-time clinical staff includes a board-certified Pediatric and School Neuropsychologist, two psychiatrists, a consulting psychologist, and 12 therapists.

12. J.G. received services at Pacific Quest from May 5, 2018 to August 2, 2018, when he was discharged. T.G. personally paid $57,302.53 for the services rendered to J.G., which represents payment in full.

13. The Plan defines Mental Illness as "mental health or psychiatric diagnostic categories listed in APA's current *Diagnostic and Statistical Manual of Mental Disorders*" that are not listed in the Plan's Exclusions. **Ex. A, at 78**. Both depression and anxiety are listed in the Manual and not in the Plan's Exclusions, which entitled J.G. to receive "Mental Health Services," which are "Covered Health Services" for the diagnosis and treatment of Mental Illnesses. *See id.* **& at 48.**

14. Mental Health Services may be performed in an "Alternate Facility," defined as a "health care facility that is not a Hospital and that provides . . . on an outpatient basis" certain services, including "[r]ehabilitative, laboratory, diagnostic or therapeutic services." *Id.* **at 71**. Pacific Quest is an "Alternate Facility."

15. The services J.G. received are reflected in the Plan's Sections 3 and 5 as Mental Health Services. *Id.* **at 10, 27**.

16. Of the multiple exclusions enumerated in the Plan, none apply or otherwise describe the services rendered at Pacific Quest. *See id.* **at 45–52.**

17. Thus, the services at Pacific Quest are, by the Plan's terms, Covered Health Services and therefore entitled to coverage. The services were provided to treat Mental Illness, were provided at an Alternate Facility, were affirmatively covered and not excluded, and were provided to a Covered Person otherwise eligible to receive benefits.

18. UHC's adjudication of the claim for services, however, fails to mention its own coverage grant language. Instead, its denial is based on reasons that are internally inconsistent and ultimately make no sense.

19. UHC's first denial is contained in a January 25, 2019 letter. *See* **Ex. B**. In that letter, UHC, through its agent United Behavioral Health, denied coverage because it "has determined [Pacific Quest's] wilderness therapy program to be an

5

experimental or unproven treatment." *Id.* **at 1**. In the same letter, however, United Behavioral Health asserts that it contracts with Pacific Quest. *Id.* **at 2**. *This explanation makes no sense*. If Pacific Quest's services were truly "experimental or unproven," then United Behavioral Health would <u>not</u> contract with it.

20. T.G. appealed the denial, which United Behavioral Health affirmed by letter dated April 12, 2019. *See* **Ex. C**. The rationale supporting its decision, however, changed. Instead of denying the service because it was "experimental or unproven," United Behavioral Health denied the claim because "[t]he procedure code in question is not a payable service." *Id.* **at 1**. *This rationale – like UHC's first explanation – is unfair, makes no sense, and is inconsistent with evidence before UHC*. It is unfair because, at the second level of appeal, to assert that the procedure code was incorrect makes it impossible for T.G. to remedy this alleged failing. It make no sense because, whatever code was used, it did not prevent United Behavioral Health from adjudicating the claim three months earlier. It is inconsistent because United Behavioral Health could not have concluded that the services rendered were "experimental or unproven" if the provider had used the wrong procedure code.

21. United Behavioral Health, again, affirmed its original denial on May 7, 2019. **Ex. D.** This time there was no mention of an improper procedure code. Instead, United Behavioral Health again represented that it concluded that

6

wilderness therapy is "found to be unproven and experimental at this time." *Id.* **at 1–2.** In addition, or perhaps alternatively, United Behavioral Health asserted that J.G.'s treatment was not medically necessary based on his conduct that occurred after treatment began. *Id.* **at 2.** *This makes no sense.* J.G.'s improvement at Pacific Quest only demonstrates that the treatment was working. It does not bear on whether the treatment was medically necessary in the first place.

**22.**   United Behavioral Health's final denial came December 6, 2019. *See* **Ex. E**. In this denial, United Behavioral Health abandoned its earlier rationale and offered yet another new basis for denial: "After reviewing the medical and appeal records and all other information available, there was insufficient new clinical data to support an overturn of the original adverse benefit determination or support an exception for coverage . . . ." *Id.* **at 2**. *This makes no sense*. The data generated <u>after</u> J.G. began treatment at Pacific Quest—the "new clinical data" deemed "insufficient" in this last denial—demonstrates only the progress J.G. was making while a patient <u>at</u> Pacific Quest. It could not have been used to assess the medical necessity of the services at Pacific Quest before those services began.

**23.**   T.G. therefore has exhausted all applicable internal remedies.

7

## LEGAL CLAIMS

### Count 1 — Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)

24. Plaintiff restates the above paragraphs as if fully set forth.

25. UHC must grant and/or pay benefits to T.G. according to the terms of its ERISA plans.

26. The services rendered at Pacific Quest were facially covered by the UHC plan. None of the reasons offered by United Behavioral Health actually justify its denial of benefits. UHC's denial of benefits was an arbitrary and capricious abuse of discretion.

**WHEREFORE,** Plaintiff requests the following:

- An order requiring Defendant to pay for all services rendered at Pacific Quest; and

- Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

DATED: February 20, 2020.          By: *s/Jennifer L. M. Jacobs*
                                                    David W. Asp (MN Bar No. 344850)
                                                    Jennifer L. M. Jacobs (MN Bar No. 328753)
                                                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                                                    100 Washington Avenue South
                                                    Suite 2200
                                                    Minneapolis, MN 55401
                                                    Tel: (612) 339-6900
                                                    Fax: (612) 339-0981
                                                    dwasp@locklaw.com
                                                    jlmjacobs@locklaw.com

                                                    Jordan Lewis (MN Bar No. 203099)
                                                    **JORDAN LEWIS, P.A**.
                                                    4473 N.E. 11th Avenue
                                                    Fort Lauderdale, FL 33334
                                                    Tel: (954) 616-8995
                                                    Fax: (954) 206-0374
                                                    jordan@jml-lawfirm.com

                                                    *Attorneys for Plaintiff*