UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

T.G.,                                                     Civ. No. 20-564 (PAM/KMM)

              Plaintiff,

v.                                                  **MEMORANDUM AND ORDER**

United Healthcare Services, Inc.,
and United Behavioral Health,

              Defendants.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the following reasons, Defendants' Motion is granted and Plaintiff's Motion is denied.

**BACKGROUND**

At the time of the events giving rise to this lawsuit, Plaintiff T.G. was a participant in his employer-sponsored health-insurance plan administered by Defendant United Healthcare Services, Inc. and United Behavioral Health ("UBH") (collectively, "United"). (Am. Compl. (Docket No. 21) ¶ 4.) In May 2018, T.G.'s 20-year-old son, J.G., started residential mental-health treatment at a program called Pacific Quest in Hawaii. J.G. is on the autism spectrum and had been suffering with depression and anxiety for years, but in the late winter of 2018 his condition deteriorated to the point that his treating psychologist recommended residential treatment. (Nguyen Aff. Ex. 1 ("Admin. R.") pt. 1 (Docket No.

48) at 77.[1]) J.G. participated in the Pacific Quest program until August 2018; his parents paid nearly $50,000 out of pocket for the treatment. After United denied coverage for the program, T.G. exhausted the administrative appeals process and then brought this lawsuit. The Amended Complaint raises a single claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). (Am. Compl. ¶¶ 24-26.)

T.G.'s frustration with United's handling of his son's benefits is understandable. United's six denial letters or explanations of benefits are rife with errors and shifting justifications for the denial of coverage. The first letter denying coverage, dated January 25, 2019, used the pronoun "her" to refer to J.G., who is, as noted, male; it referred to the insurer as Optum rather than United; and it stated that although "wilderness therapy [is] an experimental or unproven treatment" and thus was "not covered under her health plan benefits," Pacific Quest was "contracted with UBH," implying that Pacific Quest was an approved provider of mental-health services. (Admin. R. pt. 3 (Docket No. 48-2) at 94-95.) This document also listed the "dates of service" as 05/05/18 through 02/02/18. (Id. at 95.) United purported to "correct" the errors in a letter dated January 29, 2019, changing Optum to UBH, "her" to "you," and took out the sentence regarding the health plan's contract with Pacific Quest. (Id. at 51-52.)

---

[1] The complete Administrative Record is attached as Exhibit 1 to the Declaration of Ngoc Han Nguyen (Docket No. 48). Because the record is voluminous, the exhibit is in five parts. The Court will cite each part with its corresponding docket number and will cite to the pages on the Court's electronic filing system rather than the parties' Bates numbering system, for ease of reference.

In an Explanation of Benefits ("EOB") dated January 30, 2019, United sent T.G. a statement for J.G.'s treatment. (Admin. R. pt. 4 (Docket No. 48-3) at 162-63) This statement listed the treatment as "outpatient," the "amount billed" as $49,500, applied a "plan discount" of $49,500, and stated that T.G. "owe[d] the provider" $0.00. The EOB also noted that "the procedure code submitted is not eligible for payment. Therefore, no benefits are payable for this service." (Id. at 163.)

On April 12, 2019, United denied Plaintiff's appeal of the original denial of benefits. (Admin. R. pt. 3 (Docket No. 48-2) at 73-74.) The letter stated that the claim was not approved for payment because "[t]he procedure code in question is not a payable service. Therefore, the claim was appropriately processed." (Id. at 73.)

On May 7, 2019, United again denied Plaintiff's appeal, citing "Optum Level of Care Guideline for the MENTAL HEALTH RESIDENTIAL TREATMENT CENTER Level of Care." (Id. at 29-30.) The letter stated, "You were admitted for treatment of" but had no diagnosis or indeed any word or phrase after this statement. (Id. at 29.) It went on to say that "it is noted you had made progress and that your condition no longer met Guidelines for further coverage of treatment in this setting." (Id.) But as Plaintiff points out, the denial of benefits was as of J.G.'s first day in treatment, and thus his progress during that treatment could not have been relevant to that denial.

The letter also stated that benefits were denied because Pacific Quest is a "Wilderness Therapy Program"[2] that the "Optum Clinical Technology Assessment

---

[2] While United's Behavioral Clinical Policy specifically addressing wilderness therapy is highly critical of wilderness therapy, the policy nowhere states that wilderness therapy is

3

Committee . . . found to be unproven and experimental at this time. Services that are deemed to be unproven and experimental are not a covered benefit under this policy." (Id. at 29-30.) The reviewer took "the additional step of reviewing this case for medical necessity." (Id. at 30.) Because J.G. "was no longer in any serious or severe risk of harm to self or others," and "appeared to be engaged and participating in groups and activities without the need for strict supervision and monitoring," the reviewer determined that he "could have continued care in the MENTAL HEALTH INTENSIVE OUTPATIENT PROGRAM setting." (Id.)

Finally, United denied Plaintiff's May 2019 appeal in a letter dated June 24, 2019 (Admin. R. pt. 3 (Docket No. 48-2) at 84-85), and "corrected" on December 6, 2019 (id. at 40-42). The June 24 letter states that, as of May 5, 2018, J.G.'s "symptoms appeared to have been sufficiently stable, to the extent that 24/7 monitoring in a supervised Residential Treatment setting was not required to avoid risk of harm to self or others." (Id. at 84-85.) The reviewer also concluded that J.G. did not have "significant acute impairment of behavior or cognition," that he was "generally described as cooperative, responsive to staff, willing and able to engage in programming, and in reasonable behavioral control." (Id. at 85.) In addition, J.G. "had no self harm thinking; no self injurious behaviors were reported" and he did not require "24 hour care and supervision." (Id.) Accordingly, "[t]here were no clinical barriers preventing you from attending a less intensive level of care" such as an intensive outpatient setting. (Id.) Plaintiff notes that the "corrected" December 2019 letter

---

not a covered service. (Lewis Decl. Ex. C (Docket No. 36-1).)

4

merely added "care management notes" to the list of what the reviewer examined, in addition to small non-substantive changes. (Id. at 40-42.) These letters constituted the "Final Adverse Determination" of Plaintiff's internal appeal. (Id. at 42.)

Plaintiff then requested and received an external review, as required by the Affordable Care Act. This independent review, performed by MES Peer Review Services, upheld United's denial of benefits, finding that the "Mental Health Residential Treatment level of care . . . was not medically necessary in this case." (Id. at 67, 69.) The reviewer determined that J.G.'s symptoms of depression, "such as an excessive amount of sleep, refusing to get out of bed or go to classes, and work" did not "necessitate his confinement in Residential care setting." (Id. at 69.) Further, the reviewer found that the therapy Pacific Quest provided "could have been provided in less restrictive setting such as Outpatient." (Id.) And "there is no evidence based practice guideline supporting the use of wilderness therapy for [J.G.'s] condition." (Id.)

The parties now cross-move for summary judgment, each contending that the administrative record establishes that they are entitled to judgment as a matter of law.

## DISCUSSION

### A.     Standard of Review

Plaintiff first argues that the Court should review United's decision de novo, citing a Minnesota statute that ostensibly provides for such review. Minnesota law states that "no health plan . . . may specify a standard of review upon which a court may review denial of a claim or of any other decision made by a health plan company." Minn. Stat. § 62Q.107. Plaintiff contends that this provision "effectively writes out of existence the defendants'

'abuse of discretion' language on which their standard of review applies." (Pl.'s Supp. Mem. (Docket No. 34) at 19.)

Plaintiff cites no cases finding that this statute prescribes the standard of review for federal courts to use in ERISA cases. It appears that only one other decision in this District has discussed this statute in the context of a denial of health-insurance benefits. Little v. PreferredOne Ins. Co., No. 19cv1363, 2019 WL 2591166, at *4 n.4 (D. Minn. June 25, 2019) (Doty, J.). Little, however, rejected the plaintiff's argument that § 62Q.107 mandated a de-novo standard of review. Id.

This dearth of authority supporting Plaintiff's argument reflects Plaintiff's mistaken reading of the statute. The statute does not purport to establish a new standard of review for courts to use when evaluating insurance plans under federal law. Rather, it merely states that a plan cannot force a court to use a particular standard. Moreover, because the plan at issue is a self-funded plan, ERISA preempts any state law that purports to regulate the plan in any event. See Williby v. Aetna Life Ins. Co., 867 F.3d 1129, 1136 (9th Cir. 2017). To the extent that the statute attempts to set a new standard of review for ERISA claims, it is preempted.

The Supreme Court has made the ERISA standard of review clear: "[A] denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan vests the administrator or fiduciary with such authority, the Court instead applies a deferential abuse-of-discretion standard. Id.;

see also Little, 2019 WL 2591166, at *3. Plaintiff does not dispute that the plan here gives United the discretionary authority that triggers the abuse-of-discretion standard, and the Minnesota statute simply does not apply.

**B.     ERISA**

United's decision to deny benefits for J.G.'s treatment at Pacific Quest is an abuse of discretion if it is arbitrary and capricious. Under such a standard, the decision must be upheld if it is reasonable. Bruch, 489 U.S. at 111. "We measure reasonableness by whether substantial evidence exists to support the decision, meaning more than a scintilla but less than a preponderance." Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 583 (8th Cir. 2008) (internal quotation omitted). "The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." Jackson v. Metro. Life Ins. Co., 303 F.3d 884, 887 (8th Cir. 2002) (internal quotation marks omitted) (emphases in original).

Plaintiff urges the Court to use a five-factor test to determine reasonableness:

> In determining whether [a plan's] interpretation of [its terms] and decision to deny . . . benefits are reasonable, we consider whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

Finley v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992). But as United points out, Plaintiff does not argue the first four factors, contending only that United's interpretation is contrary to the plan's language.

7

Plaintiff's dispute seems to be that, in focusing on whether J.G. intended self-harm, United's decision is contrary to the level of care guidelines that the plan incorporates. These guidelines set forth who is eligible for treatment at a "Residential Treatment Center." (Admin. R. pt. 1 (Docket No. 48) at 298.)  According to the guidelines, an individual is an appropriate candidate for residential treatment "is <u>not</u> in imminent or current risk of harm to self, others, and/or property" and is suffering from a condition that "cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the [individual's] signs and symptoms and/or psychosocial and environmental factors."  (Id. (emphasis added).)  Plaintiff argues that denying benefits for residential treatment because J.G. was not experiencing suicidal ideation is directly contrary to these guidelines.

Plaintiff is correct that United's reviewers often focus on J.G.'s lack of suicidal intent despite the clear language of the plan that lack of suicidal intent is a prerequisite for admission to a residential treatment center.  But United ultimately determined that J.G.'s mental health did not warrant residential treatment for other reasons, in addition to his ostensible lack of suicidal ideation.

The level-of-care guidelines mentioned above provide examples of individuals who might need care in a residential treatment center.  These examples include "[a]cute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the [individual] or others is endangered" and "[p]sychosocial and environmental problems that are likely to threaten the [individual's] safety or undermine engagement in a less intensive level of care . . . ."  (Admin. R. pt. 1 (Docket No. 48) at

8

298.) While J.G.'s treating psychologist believed that residential treatment was necessary, United need not accept his conclusions in this regard. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

There is evidence in the record that J.G.'s mental-health issues did not require residential treatment, including notes from a neuropsychologist who evaluated him from February 2018 until shortly before he left for Pacific Quest. She noted that J.G. was engaged and polite, arrived on time, and made "good effort" to complete all the tasks she assigned. (Admin R. pt. 1 (Docket No. 48) at 58.) Moreover, the therapies J.G.'s treating psychologist claimed were no longer working—cognitive behavioral therapy (CBT) and dialectical behavioral therapy (DBT)—were the same therapies used at Pacific Quest. (Admin. R. pt. 3 (Docket No. 48-2) at 69.)

In addition, United notes that J.G. did not receive the intensive therapy usually found in residential treatment programs. He attended therapy sessions on fewer than half of the days of his 90-day stay at Pacific Quest, often receiving only one hour of therapy a day. (Admin. R. pt. 1 (Docket No. 48) at 80-202 (Pacific Quest treatment notes).) United was entitled to believe that this evidence belied Plaintiff's claim that J.G. required residential treatment.

Not only did United's reviewers disagree with J.G.'s treating psychologist, but an independent outside reviewer also disagreed with that provider. "That . . . an independent

9

and external reviewer[] upheld Defendant's decision further demonstrates that Defendant acted reasonably."  Halberg v. United Behavioral Health, 408 F. Supp. 3d 118, 143 (E.D.N.Y. 2019).  Plaintiff does not argue that the independent review was not truly independent, and thus the Court credits this evidence as supporting United's decision to deny benefits.

Given the deferential standard of review for plan decisions under ERISA, the Court cannot say that United abused its discretion in denying benefits here.  Although the Court may disagree with United's determinations and does not countenance the sloppy and confusing justifications United offered for its denial of benefits, United's determination was reasonable in light of all of the evidence in the record.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff's Motion for Summary Judgment (Docket No. 32) is **DENIED**; and

2. Defendants' Motion for Summary Judgment (Docket No. 40) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   December 15, 2020

                                              *s/Paul A. Magnuson*
                                              Paul A. Magnuson
                                              United States District Court Judge